### Ex parte CHAMBERLAIN.

(Circuit Court, D. South Carolina. February 16, 1893.)

1. FEDERAL COURTS — JURISDICTION — ILLEGAL TAXATION — INJUNCTION — RECEIVER.

A federal court has power to enjoin a sheriff from distraining property in the hands of its receiver to enforce the payment of a tax which is alleged to be illegal, especially when the property seized many times exceeds in value the amount of the tax.

2. SAME—INJUNCTION—WHEN GRANTED.

The mere fact that, under the South Carolina statute (Gen. St. § 230) authorizing sheriffs to distrain for nonpayment of taxes "sufficient personal property of the party charged" to pay the same, a sheriff, in order to collect a tax of $1,200, alleged to be due from a railroad receiver, has distrained property worth $10,000, much of which belongs to third persons, is sufficient to require the interference by injunction of the court which appointed the receiver, regardless of any question as to the validity of the tax.

3. SAME—DUTIES OF RECEIVERS—ILLEGAL TAXATION.

Property in the hands of a receiver of a federal court is bound for the payment of state taxes in the same manner as any other property, but when a receiver believes a tax to be invalid it is his right and duty to apply to the court appointing him for protection.

4. SAME—RESTRAINING ORDER.

Where a receiver of a federal court applies to the court for protection against distraint of property in his hands for the payment of a state tax which he believes to be invalid, basing his action on a prior decision of the same court that the tax was illegal, the court will extend such protection by enjoining the sheriff, and requiring the property to be restored to the receiver, until the presumption of the soundness of such prior decision has been overcome.

In Equity. Petition by D. H. Chamberlain, as receiver of the property of the South Carolina Railway Company, asking the protection of the court as to certain property, which was distrained by a sheriff to enforce payment of taxes. Injunction granted.

Brawley & Barnwell, for petitioner.

D. A. Townsend, Atty. Gen., (Samuel Lord and Ira B. Jones, of counsel,) for the sheriff.

Before GOFF, Circuit Judge, and SIMONTON, District Judge.

PER CURIAM. Under an order of this court filed on the 5th day of December, 1889, in a cause within its jurisdiction, (Bound v. South Carolina Railway Company et al.,) D. H. Chamberlain, the petitioner, was appointed receiver of the South Carolina Railway Company. By this order all of the property of the railway company came and remained in the custody of the court, protected by injunction, and was placed in the care and management of the receiver as the organ and agent of the court. The petition sets forth that the possession thus confided to him has been disturbed, and that M. V. Tyler, sheriff of Aiken county, has distrained and has taken possession of a train of 14 freight cars in the custody and control of such receiver: that of these 14 cars 5 belong to the receiver and 9 belong to the roads outside of this state, but for the purposes of interstate commerce were in the care of the receiver as such; that 8 of them are laden with merchandise belonging to private persons in this state, in the hands of the receiver as a common carrier; that the property in the custody of the court and in the hands of its receiver has been assessed for taxation; that this assessment was illegal and void because of excessive valuation and discrimination; that the receiver had tendered and paid the full sum undoubtedly due on lawful assessment, and that there remained unpaid in the county of Aiken the sum of $1,215.04, being the excess which is illegal and void; that for this sum of $1,215.04 and costs the said Tyler, under a distraining execution issued by MacMitchell, county treasurer, had seized and detained the personal property aforementioned, worth in the aggregate $10,000, a large part of it being the property of third persons, in the care of the receiver and in his custody as common carrier. The petition prays the protection of the court.

Upon hearing the petition a rule to show cause was issued and served on the said M. V. Tyler, with the usual restraining order. No attention or obedience whatever was paid to the restraining order. He has filed his return, justifying his action, and has not released or offered to release any part of the property detained, although the copy of the petition served on him stated the facts set forth above. The bare statement that property of the value of nearly $10,000 has been distrained to pay $1,215.04, and that much of it belongs to third parties, in no sense responsible for the tax, even if it be valid, would imperatively require the interference by injunction on the part of the court having this property in its custody. Section 230 of the General Statutes of South Carolina authorizes the sheriff to distrain for nonpayment of taxes sufficient personal property of the party charged with the tax to pay the same. This is the limit of his authority. Of course, he should not be confined to just enough property to pay the tax. But he

cannot, under cover of this, distrain upon $10,000 for $1,215.04. Nor under any circumstances can he distrain the property of persons other than the taxpayer. We cannot escape the conclusion that the purpose of the sheriff was not to follow the law, and that his action was the result of predetermination and intention to coerce the receiver and this court into the payment of the excessive tax, notwithstanding and despite of the claim that it was illegal and void.

But the case will not be rested on this ground. There can be no doubt that property in the hands of a receiver of any court, either of a state or of the United States, is as much bound for the payment of taxes, state, county, and municipal, as any other property. Persons cannot, by coming into this court, and, for the promotion of their interests, applying for and obtaining the appointment of receivers, obtain exemption from the paramount duty of a citizen. For this reason receivers in this district pay all just and lawful taxes without asking or needing the sanction of the court, and in their accounts such payments are passed without question. But, on the other hand, receivers are not bound to pay a tax in their judgment unlawful, without the order of the court; and when they consider the legality of the tax questionable it is their right—their manifest duty—to apply to the court either for instruction or protection. Especially is this the case when the question arises between the receiver and persons in the state, county, and municipal government as to the proper construction to be given to the law, upon which individuals may well differ, and it is his right and manifest duty to go to the court, whose creature he is, for instruction. He therefore pursued the proper course when he came in by this petition.

The research of counsel on both sides of this case has succeeded in finding five cases in which a receiver was driven to seek the protection of the court in the matter of taxation,—all of them of persuasive authority; none of them of conclusive authority. A petition was filed by a receiver before Judge Brewer in Central Trust Co. v. Wabash, St. L. & P. Ry. Co., 26 Fed. Rep. 11, praying protection from the payment of a tax. It appeared that the only reason for the application was that it was inconvenient to the receiver to pay the tax, and that its validity was in no way questioned. The petition was rejected. But the learned judge shows distinctly his opinion that upon proper showing he would have entertained the petition. This is his language:

"In levying and collecting taxes the state is exercising its sovereign power. There should be no interference with its collection of these taxes in its prescribed and regular methods, even by a court having property in the possession of its receiver, unless it is first charged that the taxes are in some way illegal or excessive.

A bill was filed in Hewitt v. Railroad Co., 12 Blatchf. 452, by receivers, to test the legality of a tax. It was heard by Mr. Justice Blatchford, who entertained the question, discussed it in a long and elaborate opinion, and sustained the legality of the tax. The same receivers came before him again in Stevens v. Railroad Co., 13

Blatchf. 104, and asked relief from the same tax, because of some irregularity. Naturally and properly, it having been decided that the tax was legal, he dismissed the petition. As we have said, a receiver must pay all legal taxes, and the court will not interfere to protect him if he attempt to escape from such payment. In Georgia v. Atlantic & G. R. Co., 3 Woods, 437, Mr. Justice Bradley did interfere with the summary process of collecting taxes by the state, and in his well-considered and able opinion established the right of interference upon the highest grounds of public policy.

Two cases were found by state courts: County of Yuba v. Adams, 7 Cal. 35, and Prince George's Co. v. Clarke, 36 Md. 206. The first case distinctly shows that the court entertained jurisdiction of a claim of a county for taxes. The second annuls a sale made of property for taxes because the property was in the hands of the court. The decisions of all of the states of the Union and of the supreme court of the United States are full of cases determining the validity of a state tax, or of municipal taxes imposed under the authority of the state legislature. The supreme court of the United States has not only declared a state tax so imposed invalid; it has also reversed the decision of the court of last resort of the state sustaining the tax. Hoge v. Railroad Co., 99 U. S. 349; Tomlinson v. Branch, 15 Wall. 460; Tomlinson v. Jessup, Id. 454,—are cases carried up from this court, each of them seeking injunction against the state auditor in the matter of taxation. In Savannah v. Jessup, 103 U. S. 563, the court decided a tax of the city of Savannah invalid. At the April term of this court, 1892, the case of Richmond & D. R. Co. v. Blake, 49 Fed. Rep. 904, (county treasurers and sheriffs,) involving the identical questions raised in this case, was heard by a full bench, and decided. The case came up on pleadings selected by the defendants themselves. Every question made as to legality of the valuation made in this case, and the discrimination and the right and duty of the court to interfere therein, was heard. The excess was pronounced void. This decision has not been reversed. It has not been appealed from. It is an authority of great weight with us. Indeed, as there is yet an opportunity of reviewing it in the supreme court, we would at all events await the result of such an appeal. When, therefore, the receiver comes into this court and asks instructions, predicating his action on the decision in this case, we grant him relief by suspending the collection of the tax until the presumption of the soundness of this decision has been overcome. Besides this, we would not in this collateral way on a rule pass upon the question either of the validity or of the invalidity of this tax.

The only remaining question is as to the jurisdiction of the court and its right to protect the property. By the case of Bound against the railway company, as we have seen, all the property of the South Carolina Railway within this state came under the jurisdiction of this court. It acquired possession of this property, and it thus has jurisdiction over the entire subject-matter, every part and parcel thereof. All property in the hands of a receiver is in the custody of the court. No one, whoever he may be, can interfere with it

without the sanction or permission of the court. Wiswall v. Samp-son, 14 How. 52.

The learned counsel who replied for the sheriff with a frankness which does him great credit, admitted the general rule as to the sanctity of property in the hands of a court; and that, when jurisdiction has once attached in this circuit court in the original case, it can extend its protection to property, even if its value be less than $2,000. He contends that to this general proposition there is one exception,—when the officers of a state come in and take the property for taxation. He argues that the taxing power is a high exercise of sovereignty, and that to permit a court to interfere with the collection of a tax is to invade the sovereign right, and to embarrass the government. But we have seen that courts all over this country have entertained cases involving the validity of a state tax, in many cases imposed by the legislature, and in very many instances have declared the tax invalid, even a tax imposed by a state legislature, in which is vested more of the attributes of sovereignty than any other department of the state governments. There are many cases of this kind in the reports of the courts of South Carolina. In Hand v. Railroad Co., 17 S. C. 221, upon a claim made by the state for taxes upon property in the hands of a receiver, the court examined into the validity of the claim, and rejected it. In the very recent cases of State v. Cromer, 35 S. C. 230, 14 S. E. Rep. 493; State v. Boyd, 35 S. C. 233, 14 S. E. Rep. 496,—the supreme court of South Carolina examined into the validity of the action of the comptroller general in a matter of the assessment of property for taxation, and, after examination, set it aside. The court quotes with approval the language of Moses, C. J., in State v. County Treasurers, 4 S. C. 520:

"The power to tax is the most extensive and unlimited of all the powers which a legislative body can exert. It is without restraint, except by constitutional restrictions. To tie up the hand [of the court] that can alone resist its unlawful encroachment would not only render uncertain the tenure by which the citizen holds his property, but make it tributary to the unrestrained demands of the legislature."

The language of Miller, J., in U. S. v. Lee, 106 U. S. 220, 1 Sup. Ct. Rep. 240, is not inappropriate:

"The defense stands here solely upon the absolute immunity from judicial inquiry of everyone who asserts authority from the executive branch of the government, however clear it may be made that the executive possessed no such power. Not only no such power is given, but it is absolutely prohibited, both to the executive and the legislative."

It is not claimed that the state, in order to obtain payment of its taxes, must come into court by petition, and get an order for their payment. On the contrary, as has been said, the paramount right of the state has always been and is acknowledged, recognized, and faithfully preserved. Without any interference whatever on her part, her priority is maintained and observed. But when persons assuming to act in the name of the state seize upon, without notice, and assert exclusive possession of, property in the hands of the receiver and under the protection of this court, and, while so assuming

to act, take property greatly in excess of the sum claimed, the court must and will interfere.

At the hearing a number of affidavits were read going to the issue, was this a legal tax? Upon a rule of this kind it is not competent for us to go into this question. It must be made in a direct proceeding. Such proceedings are already on file in this court. We recognize that the question has not been finally decided, and for this reason our injunction goes only until a further order. If testimony be offered in the orderly way, and if the fact be established that the assessment and the taxes levied thereunder are just and lawful, it will afford the court pleasure, and it will be its duty, to order the taxes paid forthwith, as a paramount lien on all the property and funds in the hands of the receiver.

## The Injunction.

This cause came on to be heard on petition, rules to show cause, return thereto, and affidavits. Hearing the same, and upon due consideration thereof, it is ordered, adjudged, and decreed that an injunction do issue to M. V. Tyler, sheriff of Aiken county, his deputies and agents, enjoining and restraining them from further intermeddling, interfering with, keeping and holding the personal property distrained upon by him, belonging to the petitioner as receiver of the South Carolina Railway Company, or in his care and custody as receiver and common carrier, and that this injunction remain of force until the further order of this court. It is further ordered that the said property be restored to the custody of the receiver of this court, and that the marshal put him in possession thereof.