## VIRGINIA, T. & C. STEEL & IRON CO. v. BRISTOL LAND CO.

### (Circuit Court, W. D. Virginia. January 7, 1898.)

1. RECEIVERS—PROTECTION OF PROPERTY—PROCEDURE.
   Proceedings by a receiver to obtain an injunction for the protection of property in his custody may be instituted by petition in the receivership suit.

2. SAME—TAXATION.
   Property constructively in the custody of the court through its receiver is not subject to sale for delinquent taxes.

3. SAME—FEDERAL JURISDICTION—STATE AS PARTY.
   A sale of property in the custody of a receiver for taxes is void, and, even though the state buys the property in at such sale, it acquires no title; hence a proceeding to enjoin interference with the property by persons who have attempted to redeem it from the state is not open to the objection of being a suit against the state.

J. B. Richmond, for petitioner.

Fulkerson, Page & Hurt and H. W. Sutherland, for respondent.

PAUL, District Judge. In this cause the receiver, John C. Haskell, appointed by a decree entered on the —————— day of August, 1892, filed a petition praying for an injunction against J. L. C. Smith, late treasurer of the city of Bristol, Va., John D. Thomas, H. E. Graves, and Charles Burson. The petition, after reciting the appointment of a receiver, states that the bulk of the assets coming into the hands of the receiver consists of a number of town lots situate in the city of Bristol, and of a number of purchase-money notes secured by vendor's liens on other town lots in the city of Bristol, which had theretofore been sold by said Bristol Land Company to various persons for part cash and part on credit; that there were no funds belonging to said company when the receiver was appointed, nor have any come into his hands, out of which to pay current expenses of the property, taxes on the same, and other charges of the receivership. It further states:

"That a number of the aforesaid town or city lots, some of which are owned by said company and some on which there are liens as aforesaid, have been returned delinquent for unpaid taxes, and your petitioner has not paid these taxes, partly because he is advised that there is a question about the regularity of their assessment, but principally because he has had no funds with which to meet them. Your petitioner further represents that various individuals, particularly John D. Thomas, H. E. Graves, Charles Burson, and others, claiming to proceed under certain statute laws of the state of Virginia, are attempting to defeat the possession, title, and ownership of your receiver in and to said lots by filing applications with the clerk of the corporation court of the city of Bristol, asking to be allowed to redeem said lots from the taxes aforesaid, and seeking thereby to acquire title and possession to said lots. The proceedings under which said parties are now making these attempts are the delinquent tax returns made by one J. L. C. Smith, former treasurer of said city, and certain attempted sales made by him to the auditor of the state of Virginia. Your petitioner is informed, believes, and charges that the said parties have taken said proceedings and have done the acts aforesaid with full knowledge of the said receivership. Your petitioner avers that if these parties are allowed to defeat his title to said lots that the assets of the Bristol Land Company will be practically destroyed. Your petitioner is advised that any lien of the state of Virginia

will be amply protected by this court and provided for in the final distribution of the assets, but that during the receivership your petitioner's title and possession will be protected."

The prayer of the petition is that said John D. Thomas, H. E. Graves, Charles Burson, and J. L. C. Smith, former treasurer, and all other persons, "be inhibited and enjoined from doing any such acts as are referred to in this petition, or in any manner interfering with any of the property or assets of the receiver of the Bristol Land Company; and that a rule be issued against said parties" requiring them "to show cause, if any they can, why all their aforesaid acts and proceedings relative to the sale or purchase of any of the lands of the Bristol Land Company for alleged taxes shall not be annulled, why they shall not be permanently enjoined from any further acts therein, and why the said John D. Thomas, H. E. Graves, and Charles Burson shall not be dealt with for their contempt of this court."

A temporary injunction was awarded against the defendants, and a rule requiring them to show cause why the injunction should not be made perpetual, and why they should not be fined and attached for interfering with property in the hands of the receiver.

The defendant J. D. Thomas files a demurrer to the petition. The substance of the grounds assigned in the demurrer is:

"(1) That the plaintiff is not entitled to proceed by petition upon the matters set forth, and is not entitled to bring the defendant into the said cause in which said petition is filed for the purpose of litigating the matters set forth in said petition, but that the plaintiff's proceedings, if he is entitled to proceed as to the matters set forth in said petition, is by a bill in equity. (2) That the commonwealth of Virginia is the owner of the lands mentioned in the petition, and therefore interested in the subject, and, inasmuch as it cannot be made a party defendant in such cause without its consent, this court is without jurisdiction."

To the rule awarded on the petition the defendants Smith, Thomas, and Graves file their separate answers.

The defendant J. L. C. Smith in his answer says:

"This respondent was the treasurer of the city of Bristol, but his term of office as such terminated on the 30th day of June, 1896, and since that time this respondent has not acted as treasurer; that all acts done by him in the premises were done officially as such treasurer; that he has no interest whatever in the subject-matter of said rule, or in the petition upon which said rule was issued. (2) That during the time respondent was treasurer of the said city of Bristol he, under and pursuant to the statutes in such cases made and provided, made sale of certain lots of land standing in the name of the Bristol Land Company, on the ——— day of December, 1893, and on the ——— day of December, 1894. Such sales were made under and pursuant to the laws of the state of Virginia providing for the sale of lands returned as delinquent for the nonpayment of taxes, and the sales made by respondent were made after such advertisement as is required by the statute, and otherwise in conformity to the statutes relating to the sale of delinquent lands. (3) That the lands of the said Bristol Land Company so sold by respondent were purchased in the name of the auditor of public accounts, for the benefit of the commonwealth of Virginia and the city of Bristol, and report of said sales made as required by law."

The separate answers filed by the other defendants are substantially the same, and that of John D. Thomas will serve to show the defenses set up by all. The answer of Thomas is as follows:

"(1) Respondent admits that John C. Haskell was appointed receiver in said cause, and that he duly qualified as such, and respondent presumes that he took charge of all the property and assets of the Bristol Land Company, but, not knowing the fact, respondent neither admits nor denies said statement. Respondent admits that said petitioner has continued. to act as receiver of said company. (2) Respondent presumes it to be true that the bulk of the assets coming into the hands of the petitioner as receiver consisted of a number of town lots and a number of purchase-money notes secured by vendor's liens on other town lots, but respondent does not know the fact, and therefore can neither admit nor deny said statement. (3) Respondent does not know the condition of the Bristol Land Company at the time of the appointment of the petitioner as receiver, and can therefore neither admit nor deny the statement that at the time of said appointment there were no funds belonging to said company out of which any demands could be paid, and that no funds have come into the hands of the petitioner since his appointment with which to pay the current expenses of the property, taxes upon the same, and other charges of the receivership. (4) It is admitted that a number of the said town or city lots, some owned by said company and some on which said company had liens, have been returned delinquent for unpaid taxes, and it is also admitted that said petitioner has not paid these taxes, but, not knowing the reasons for said failure, respondent cannot admit, but on the contrary denies, that said failure to pay said taxes was 'partly because he is advised that there is a question about the regularity of the assessment'; and, while it may be true that said failure was principally because he has had no funds with which to meet them, yet respondent can neither admit nor deny that such is the fact. (5) Respondent denies that he, claiming to proceed under certain statute laws of the state of Virginia, is attempting to defeat the possession, title, and ownership of said receiver in and to said lots by filing applications with the clerk of the corporation court of Bristol asking to be allowed to redeem said lots for the taxes aforesaid, and seeking thereby to acquire title and possession to said lots. Respondent denies that there is any title or ownership of said lots in the said petitioner, and denies that he is in any manner interfering with the possession of said lots by said receiver. The truth is that respondent, acting under the provisions of the statute laws of Virginia, has filed applications to purchase forty-five or forty-six lots situate in the city of Bristol, which lots were then owned by the commonwealth of Virginia, under and by virtue of a purchase made by the auditor at a sale for delinquent taxes made by J. L. C. Smith, treasurer of the city of Bristol, on the 5th day of December, 1894, which purchase was made by said auditor more than two years before the filing of respondent's said applications. The statute under which respondent filed said applications is to be found in the Acts of the General Assembly (Sess. 1895–96) pp. 219, 220. Respondent herewith files a list of said lots from the records of the corporation court of the city of Bristol. Whilst respondent admits that by said applications he was endeavoring to obtain the legal title to said lots, yet respondent denies that he has made or is making any effort or attempt to interfere with the possession of said lots by said receiver. Respondent further states that he complied with the statute referred to in making said applications, and that notices of said several applications were duly served as required by said statute. (6) Respondent admits that his proceedings in regard to said applications were made and taken after he had been informed that said receiver had been appointed. (7) And, stating new matter, respondent says that the time, thirty days, after the giving of said notices of said applications, has expired, and that said lots have not been redeemed by the payment of the taxes thereon."

The first objection raised by the demurrer to the petition is that the proceedings by the receiver to obtain an injunction cannot be taken by petition. This objection cannot be sustained. Where, in a pending suit, the court has in its custody property which it has by its orders placed in possession of a receiver, and an injunc-

tion becomes necessary to the protection of such possession, the proper course is for the receiver to file a petition in the same suit, invoking the power of the court to protect his possession and control of the property. He is not required to bring a separate suit in equity. Such a proceeding is entirely unnecessary, for "the receiver is the ministerial officer of the court which appoints him, and his possession is exclusively the possession of the court, the property being regarded as in the custody of the law." 20 Am. & Eng. Enc. Law, 137. Such proceeding is necessary as will call the attention of the court to the fact that its jurisdiction is being invaded. This is an interlocutory application, which is a request not incorporated in a bill, but is made to the court for its interference in a matter arising in a cause, either before or after a decree. An interlocutory application is made by motion on petition. Fost. Fed. Prac. (2d Ed.) § 193. "Petition and rule for attachment is a proper method to pursue in a proceeding for contempt in disobeying an order of court, although not the only remedy." American Const. Co. v. Jacksonville, T. & K. W. Ry. Co., 52 Fed. 937. The receiver in this case has pursued the same course, that by petition and rule, as was taken in Ex parte Chamberlain, 55 Fed. 704. The case In re Tyler, 149 U. S. 164, 13 Sup. Ct. 785, involved the validity of the proceedings in Ex parte Chamberlain, supra. The court said:

"The property in question was in the custody of the circuit court in a case within its jurisdiction and protected by injunction. The power exercised was the power to protect the property in the custody of the court from invasion, and, in order to sustain the receiver's application, the ordinary grounds of equity interposition were not required to be set forth."

Further citation of authorities on this question is unnecessary.

As to the second ground of demurrer, namely, "that the commonwealth of Virginia is the owner of the lands mentioned in the petition, and therefore interested in the subject, and, inasmuch as it cannot be made a party defendant in such case without its consent, this court is without jurisdiction." The same question was raised before the supreme court in Re Tyler, supra, and the same argument urged as in this case to convince the court that to restrain an officer of a state to prevent his seizure of property in the custody of the court was a suit against the state itself. But the court said:

"The stress of the argument, however, on behalf of the petitioner, is placed upon the proposition that this proceeding is void because it is in fact a suit against the state, and forbidden by the eleventh amendment. But this begs the question under consideration. The petitioner was either in contempt or he was not. This property was in the custody of the circuit court under possession taken in a cause confessedly within its jurisdiction, and, if such possession could not be lawfully interfered with, the petitioner was in contempt. And, apart from the question of the validity of such legislation, we know of no statute of South Carolina that attempts to empower its officers to seize property in the possession of the judicial department of the state, much less in that of the United States. The object of this petition was, we repeat, to protect the property, but, even if it were regarded as a plenary bill in equity properly brought for the purpose of testing the legality of the tax, we ought to add that, in our judgment, it would not be obnoxious to the objection of being a suit against the state."

This case is decisive of this question, and settles adversely to the defendants their contention that this is a proceeding against the state. Besides, the defendants Thomas, Graves, and Burson are in no sense officers of the state of Virginia. They are merely private citizens, acting in their individual capacity in their efforts, under the provisions of the Virginia statute, to acquire title to property in the custody of this court which by its orders it has placed in the possession of its receiver. The defense they seek to make in this proceeding against them for contempt, that it is a proceeding against the state of Virginia, is not entitled to serious consideration.

There is no evidence of any irregularity in the assessment of the taxes on these lots, and the question will not be considered.

The defendants in their answers claim that all the proceedings that have been taken by them with regard to any of the lots in the possession of the receiver were taken pursuant to the provisions of the tax laws of the state of Virginia relative to the sale of lands returned delinquent for the nonpayment of taxes. The defendant Smith says in his answer that, as treasurer of the city of Bristol, he sold in the month of December, 1893, and in the month of December, 1894, certain lots in the city of Bristol standing in the name of the Bristol Land Company, and that the same were purchased in the name of the auditor of public accounts. These sales, he claims, were made in pursuance of section 662 of the Code of Virginia, of 1887, which provides: "When any real estate is offered for sale as provided in section six hundred and thirty-eight and no person bids the amount chargeable thereon, the treasurer shall purchase the same in the name of the auditor of public accounts for the benefit of the state and county, city, or town, respectively, * * *." The answers of the other defendants show that they were proceeding to obtain title to a number of these lots so sold to the auditor of public accounts in accordance with the provisions of an act of the general assembly of Virginia. Acts 1895-96, p. 219. This act provides: "When real estate so purchased in the name of the auditor is not redeemed by the previous owner, his heirs or assigns, or some person having the right to charge the same with a debt, within two years from the date of such purchase, any person desiring to purchase it shall file an application with the clerk of the county or corporation court wherein such real estate is situated for the purchase of such real estate for the amount for which the sale to the commonwealth was made;" and the statute provides what further steps shall be taken in order that the person desiring to purchase such real estate may acquire title to the same. It is not necessary, for the purposes of this case, to recite these further provisions.

The questions to be decided in this case fall clearly within the doctrine laid down in Re Tyler, supra; the chief difference in the two cases being that in Re Tyler the seizure by the tax collector was of personal property, while in this case the property sought to be taken from the custody of the court and sold for taxes is real estate. No reason has been assigned, nor can the court conceive

of any, why the principle which protects personal property in the custody of the court from seizure and sale for taxes is not equally applicable to the protection of real estate in the custody of the court from seizure and sale for the payment of taxes. The reason of the law is applicable to both species of property. The jurisdiction of the court cannot be invaded as to either.

In Re Tyler, supra, the court says:

"No rule is better settled than that, when a court has appointed a receiver, his possession is the possession of the court, for the benefit of the parties to the suit and all concerned, and cannot be disturbed without leave of the court; and, if any person without leave intentionally interfere with such possession, he necessarily commits a contempt of court, and is liable therefor,"—citing Wiswall v. Sampson, 14 How. 52; Taylor v. Carryl, 20 How. 583; Davis v. Gray, 16 Wall. 203; and a number of other authorities.

It further says:

"The general doctrine that property in the possession of a receiver appointed by a court is in custodia legis, and that unauthorized interference with such possession is punishable as a contempt, is conceded; but it is contended that this salutary rule has no application to the collection of taxes. Undoubtedly property so situated is not thereby rendered exempt from the imposition of taxes by the government within whose jurisdiction the property is, and the lien for taxes is superior to all other liens whatsoever, except judicial costs, when the property is rightfully in the custody of the law, but this does not justify a physical invasion of such custody and a wanton disregard of the orders of the court in respect of it. The maintenance of the system of checks and balances characteristic of republican institutions requires the co-ordinate departments of government, whether federal or state, to refrain from any infringement of the independence of each other, and the possession of property by the judicial department cannot be arbitrarily encroached upon, save in violation of this fundamental principle. The levy of a tax warrant, like the levy of an ordinary fieri facias, sequestrates the property to answer the exigency of the writ; but property in the possession of the receiver is already in sequestration, already held in equitable execution, and, while the lien for taxes must be recognized and enforced, the orderly administration of justice requires this to be done by and under the sanction of the court. It is the duty of the court to see to it that this is done; and a seizure of the property against its will can only be predicated upon the assumption that the court will fail in the discharge of its duty,—an assumption carrying a contempt upon its face."

The chief defense relied on by the defendants in their answers is that Smith, the treasurer of the city of Bristol, having, under the provisions of the Virginia tax law, sold the lots in question to the auditor of public accounts of the state of Virginia for the benefit of the commonwealth and the city of Bristol, that that was a valid sale, and that the other defendants, in pursuance of the provisions of another section of the tax law touching delinquent lands, are simply endeavoring to acquire the title which vested in the auditor for the benefit of the commonwealth and the city of Bristol. If the treasurer, Smith, had no right to invade the jurisdiction of this court, and take control of and dispose of property in the hands of its receiver; if in doing this he was in contempt of this court,—then the court is at a loss to see on what principle he could make a valid sale of this property to the auditor for the benefit of the commonwealth and the city of Bristol any more than he could make a valid sale to a private person. His authority as

a tax collector to dispose of these lands as delinquent for the non-payment of taxes ceased when the proceedings were instituted for the sequestration of all the property of the Bristol Land Company. After that no person or officer, whether state or federal, not even the receiver himself, could sell any of the property except by an order of the court. A sale made in any other way or by any other person is null and void. It follows that the proceedings taken by the other defendants, Thomas, Graves, and Burson, based on the void sale made by Smith, as treasurer, to the auditor of public accounts, for the benefit of the commonwealth and the city of Bristol, are likewise null and void. The acts of all the defendants have been in contempt of the authority of this court, and are punishable as such. This being the first proceeding in this district in which the questions passed upon have arisen, and it appearing to the court from the answers of the defendants that they have not committed any willful wrong, the court will forego any action in the matter of contempt it might otherwise take. The temporary injunction will be made absolute. A decree will be entered at the present term directing a sale of all of the property of the Bristol Land Company, and providing for the payment, as first liens, of all taxes due the commonwealth of Virginia, the city of Bristol, and any of the counties in which the lands of said company are situated.