## JOHNSON v. SOUTHERN BUILDING & LOAN ASS'N.

### In re NELMS.

### (Circuit Court, W. D. Virginia. April 8, 1904.)

**1. TAX SALE—VALIDITY OF DEED—PROPERTY IN CUSTODY OF COURT.**

A tax deed, executed after the property has passed into the custody of a court by its appointment of a receiver for a mortgagee, is void, and ineffective to cut off the receiver's right of redemption.

In Equity.

Wm. Gordon Robertson, for T. E. Nelms.

White & Penn, for receiver.

McDOWELL, District Judge. The question here arises on an ancillary bill filed by the receiver to foreclose the lien of a deed of trust or mortgage on the lot hereinafter mentioned. The bill has been answered by T. E. Nelms and other parties in interest. On July 1, 1892, J. O. Hanes conveyed certain real estate in the city of Roanoke to a trustee to secure to the Southern Building & Loan Association the repayment of a loan. The taxes on this property for the year 1889 not having been paid, it was on January 5, 1891, sold by the proper authorities, and bid in by one Huff, who subsequently assigned his rights to one Nowell, who in turn assigned to Nelms. On February 26, 1898, Nelms obtained from the clerk of the corporation court of the city of Roanoke a tax deed conveying the property in question. By decree of January 28, 1897, of this court, a receiver had been appointed and directed to take charge of the assets and property, real, personal, or mixed, of the said building and loan association, and the officers of the association were directed to

transfer all the assets in this district to the receiver, and were enjoined from taking any other or further action. The Virginia statute allows the owner, or any person having a right to charge real estate with a debt, two years after a tax sale such as was made here within which to redeem the land. At the expiration of the two years, if there has been no redemption, the purchaser at the tax sale may obtain a deed from the clerk of the court. If no such deed is obtained within one year after the expiration of the said two years, "the former owner, his heirs or assigns," may, after such year, and before such deed is made, redeem the land. Code 1887, §§ 650, 660 (as amended, Acts 1893–94, pp. 472, 473, c. 402). No question is here made as to the right of the building and loan association and the receiver of this court, under section 660, to redeem the land up to the time the clerk's deed was executed to Nelms. There is also no question made as to the right of Nelms to priority of payment of the money paid by him or his assignors on the land for taxes and interest thereon. It is insisted, however, that by reason of the execution of the clerk's deed Nelms became the absolute owner of the land, and that the lien of the building association has been lost. Huff's right to a tax deed inured in 1893. He neglected to obtain it, and it was not until an assignment to Nelms, more than a year after the property of the building association had been put in charge of the receiver of this court, that the deed was obtained. This delay upon the part of the purchaser at the tax sale was voluntary. From January 5, 1894, until the clerk's deed had been obtained, a right to redeem from the tax sale was given by the statute. It seems to me that the execution of the clerk's deed after the appointment of the receiver by this court does not put Nelms in any higher or stronger position than Huff or Nowell was in just prior to the receivership. The appointment of the receiver put this property in the custody of this court. I do not mean that the occupancy or possession of the land passed to the receiver either actually or in theory. The association had, under the deed of trust, no right of occupancy, but only a lien on the land. This right alone passed to the receiver. But when the receiver was appointed the custody of the land, the right to deal with it, the sole right to sell it and equitably distribute the proceeds of sale, passed into this court. No act done by any lienor or other claimant of the property thereafter could dispossess this court of its jurisdiction over the property, and take the property out of the custody of this court. The power of the association to redeem the land from the tax sale, as well as all funds applicable to such purpose, were taken from the association by the court, and given to the court's officer, its receiver. If a delay by the receiver in redeeming this land is to work a loss to the association's creditors, the law is in a most deplorable state. If so, the court must enter on a race of diligence with adverse lienors or claimants, or the property rights intrusted to its care and custody may be lost.

It does not seem to me that in a case such as we have here the question of actual possession of the land is of any importance whatever. If the lien of the deed of trust, which was intact when the receiver was appointed, subject only to a right in Huff or Nowell to have priority of payment of the tax money and interest, has been lost, it is because of

want of diligence on the part of the court's "hand." I cannot believe that such a theory will ever prevail. Action by a receiver in such matters is frequently delayed by the necessity for a reference to a commissioner, or for title examinations, or for an order by the court. And even where there is a manifest want of diligence by a receiver the creditors of the estate are not responsible for such want of diligence, and should not be made to suffer for it. In Oakes v. Meyers (C. C.) 68 Fed. 807, the land in question does not appear to have been in the actual possession of any one, and it was held that land in custody of receivers of a federal court can be reached by proceedings for the collection of state taxes only with the consent of such court. In this case Judge Beatty said:

"All the lands to which the railroad company may have any claim or title being in the hands of the receivers of this court, are in custodia legis, and cannot, without the consent of the court, be sequestrated by any other authority. That property under the direct control of a court can be reached only through the authority of such court has been the law so long that it has become elementary."

While Ex parte Tyler, 149 U. S. 180, 13 Sup. Ct. 785, 37 L. Ed. 689; Ex parte Chamberlain (C. C.) 55 Fed. 704; Ex parte Huidekoper, Id. 709; Virginia, T. & C. Co. v. Bristol Land Co. (C. C.) 88 Fed. 134, and Ledoux v. La Bee (C. C.) 83 Fed. 761—are seemingly discriminated from the case at bar because of the actual possession by the receivers in those cases of the property in question, I am inclined to think that the decisions would have been the same had there been merely a legal custody of the property instead of an actual possession thereof. And in Virginia, T. & C. Co. v. Bristol Land Co., supra, there was in fact no possession or right of possession in the receiver as to the lots which had been conveyed by the Bristol Land Company. As to these lots there was merely a vendor's lien retained by the defendant company, and this lien alone had passed to the receiver. As the report shows, there had been no foreclosure of these vendor's liens. The possession, or the right to the possession, of these lots, was in the vendees thereof, and still proceedings to acquire tax titles thereto were enjoined.

In the argument of the Tyler Case, 149 U. S. 175, it was said:

"The orderly administration of justice requires noninterference with the property in the hands of the court without the court's permission. This is a settled principle of law."

In Wiswall v. Sampson, 14 How. 65, 14 L. Ed. 322, it is said:

"A party, therefore, holding a judgment which is a prior lien upon the property, the same as a mortgagee, if desirous of enforcing it against the estate after it has been taken into the care and custody of the court to abide the final determination of the litigation, and pending that litigation, must first obtain leave of the court for this purpose. The court will direct a master to inquire into the circumstances whether it is an existing unsatisfied demand, or as to the propriety of the lien, etc., and take care that the fund be applied accordingly."

And again (page 66, 14 How., 14 L. Ed. 322):

"It has been argued that a sale of the premises on execution and purchase occasioned no interference with the possession of the receiver, and hence no contempt of the authority of the court, and that the sale, therefore, in such

a case, should be upheld. But, conceding the proceedings did not disturb the possession of the receiver, the argument does not meet the objection. The property is a fund in court, to abide the event of the litigation, and to be applied to the payment of the judgment creditor, who has filed his bill to remove impediments in the way of his execution. If he has succeeded in establishing his right to the applicaton of any portion of the fund, it is the duty of the court to see that such application is made. And, in order to effect this, the court must administer it independently of any rights acquired by third persons pending the litigation; otherwise the whole fund may have passed out of its hands before the final decree, and the litigation become fruitless."

And again (pages 67-68, 14 How., 14 L. Ed. 322):

"As we have already said, it is sufficient, for the disposition of this case, to hold that while the estate is in the custody of the court as a fund to abide the result of a suit pending no sale of the property can take place, either on execution or otherwise, without the leave of the court for that purpose. And upon this ground we hold that the sale by the marshal on the two judgments was illegal and void, and passed no title to the purchaser."

See, also, Peale v. Phipps, 14 How. 368, 14 L. Ed. 459.

In Burleigh v. Chehalis County (C. C.) 75 Fed. 873, in which it does not appear that the receiver was in possession of the land sought to be sold for state taxes, Judge Hanford said:

"All the property of the Northern Pacific Railroad Company situated in this state, including real estate, is, and was at the date of the judgment referred to, in the legal custody of this court, through its receiver, and it is not subject to seizure or sale under process emanating from any other authority. This court will require its receiver to pay all lawful taxes, and there is no necessity for burdening the property with the expense of a sale under the state revenue law; and such proceedings, which interfere with the administration of the estate in receivership, cannot be permitted."

In Askew's Case, Fed. Cas. No. 585, in which the wife of a voluntary bankrupt, immediately after the filing of the petition in bankruptcy, sought to have set apart a homestead in the bankrupt's land, is a quotation from In re Vogel, Fed. Cas. No. 16,983, as follows:

"When a voluntary petitioner in bankruptcy files his petition in bankruptcy in due form, he becomes eo instante a bankrupt, so far as any interference with the property named in his schedule is concerned; and such property is thereby brought into the bankruptcy court, and placed in its custody and under its protection, as fully as if actually brought into the visible presence of the court. Being in the custody of the bankruptcy court, no other court, and no person acting under any process from any other court, can, without the permission of the bankruptcy court, interfere with it, and to so interfere is a contempt of the bankruptcy court."

In Phelps v. Sellick, Fed. Cas. No. 11,079, a mortgagee, after the mortgagor had filed a petition in bankruptcy, proceeded in a state court to foreclose his mortgage. The foreclosure sale was held a nullity, and nothing in the report shows that the possession of the land had passed out of the bankrupt. See, also, In re Cunningham, Fed. Cas. No. 3,478, and Fox v. Hempfield R. Co., Fed. Cas. No. 5,011.

In Davis v. Gray, 16 Wall. 203, 219, 21 L. Ed. 447, the receiver of a railroad company was seeking to enjoin the state officers from granting certain lands which had been previously granted to the railroad company, and which grant the state had since declared forfeited. An injunction was granted by the trial court, and this ruling was affirmed

by the Supreme Court. In the opinion (page 219, 16 Wall., 21 L. Ed. 447) it is said:

"Here the property in question is not in the possession of the defendants. The possession of the receiver has not been invaded. He has not been in possession; is not seeking possession; and there is no question in the case relating to that subject. But the order of the court expressly requires the receiver to secure and protect 'the assets, franchises, and rights,' and 'the land grant and reservation of said company.' He is seeking to perform that duty by enjoining the appellants from doing illegal acts, which the bill alleges, if done, would render the rights and title of the company to the immense property last mentioned of greatly diminished value, if not wholly worthless. We think it is competent for him to perform this function in the mode he has adopted."

The case of Barton v. Barbour, 104 U. S. 128–129, 26 L. Ed. 672, seems practically conclusive of the question in hand. The opinion clearly shows that an invasion of the possession of a receiver is not the reason for refusing to allow rights claimed against the receiver to be asserted otherwise than in the court appointing the receiver. In the opinion it is said:

"So in Ames v. Trustees of Birkenhead Docks, 20 Beav. 332, Lord Romilly, Master of the Rolls, said that it is an idle distinction that the rule forbidding any interference with property in the course of administration in the Court of Chancery only applies to property actually in the hands of the receiver, and declared that it applied to debts, rents, and tolls which the receiver was appointed to receive."

At the time the receiver was appointed the predecessor of Nelms had a mere prior lien on the land. I do not perceive that he was in any higher position than would have been a senior mortgagee. For illustration, let us suppose that at the time of the appointment of the receiver Nelms had a first mortgage on the land in question, and the building association a second mortgage. If Nelms had obtained by suit in a state court, after the appointment of the receiver, a decree of foreclosure, had had the land sold, and had bid it in and obtained a commissioner's deed, I think the duty of this court would be to annul such foreclosure and such deed, and to proceed to subject the property to sale for the payment of all liens in the order of priority fixed by this court.

As there is no dispute as to the fact that the taxes for 1889 were delinquent, and that they were paid by Huff, I think that Nelms is, in any event, entitled to a priority of payment out of the proceeds of sale of the lot to the amount bid by Huff, as to all taxes subsequently paid by Huff, or Nowell, or Nelms, and to interest on such payments from their date. As the survey and the clerk's deed were obtained after the appointment of the receiver, the cost of the survey, of the deed, and of recording the latter should not be repaid to Nelms.

In the brief for the receiver several objections are made to the validity of the tax deed and of the tax sale, founded on alleged failures by the different state officials to follow the law. I desire to rest my decision of the question here presented on the ground herein above stated, and consequently I express no opinion on these questions arising under the tax laws.

The decree to be drawn should declare the tax deed to Nelms null and void, should ascertain a prior lien in favor of Nelms for the amounts above stated, and, if the case on the ancillary bill is now ripe for a de-

cree of sale, the receiver should be directed to advertise and sell the lot.

In this connection it occurs to me that when a deed is made to the purchaser at the receiver's foreclosure sale it should contain a reference to the decree to be now entered by its date and place of record in the order book, and a recital that said decree declares the tax deed to Nelms null.