## GREGG COMPANY, LTD., Complainant,

*v.*

## UTUADO SUGAR COMPANY, Dft.

San Juan, Equity, No. 898.

BACK TAXES IN RECEIVERSHIPS.

Receiver—Lease—Taxes.

    1. A person leasing property which is in the hands of a receiver is not bound to pay taxes on the property which accrued before the lease was entered into.

---

NOTE.—For authorities passing upon the question of priority of claim for taxes, against property in the hands of a receiver, see note in 2 L.R.A. (N.S.) 1052.

Gregg Co. v. Utuado Sugar Co. :

Taxes—Lien—Priority.

2. Taxes are a first lien, and will be given priority over all other liens when the property is sold.

Taxes—Payment.

3. It is the duty of the court to recognize as paramount the just claims for taxes of the People of Porto Rico, and to see that they are paid before the estate is distributed to other creditors.

Taxes—Surcharges—Priority.

4. Surcharges for unpaid taxes are entitled to the same priority that attached to the taxes.

Opinion filed July 24, 1916.

_Mr. J. C. Bills, Jr.,_ for People of Porto Rico.

HAMILTON, Judge, delivered the following opinion:

It occurs to me that there are two matters before the court. It is not material whether they are raised by petition or how. They are before the court. The one is, the lessee Cabrera professes to be ready—and I do not question it—to pay the taxes he is required to pay by his lease, but says that when he does so, or if he does so, his payment is credited way back on some old taxes before the lease, so that the property does not apparently get the benefit of his payment as required by his lease. That is to say, he apparently does not pay upon the records of the Island the taxes which the lease requires him to pay, and the difficulty with him is to know how to get around that point. He wants to carry out his contract, but the condition in which the property was left when this lessee took charge with old taxes on it makes it impossible, upon the face of it, for him to do so.

Gregg Co. v. Utuado Sugar Co.

1. As to the lessee, my opinion is this, that if that is a fact which he sets up, it is a condition for which he is not responsible, and all that could be required of him is that whatever are the taxes for the current year the lessee is bound to pay into the Insular Treasury or to whoever is the proper official. And he, according to my present idea, would be directed to take that course, the application being beyond his power; but in so doing he will make that tender as for the current year, make it in writing so that it can be a matter of record. What the action of the insular authorities in the matter will be I cannot say, but I do not think it is a matter for which the lessee is responsible. If he attends to the taxes, that is all he is bound to do. That is one point.

2. The other is the application of the Treasurer for the payment of the taxes now, for direction to the clerk or custodian of the income to pay all taxes due. There is no question that the taxes, if properly assessed,—and as to that it seems there is no question,—are a first lien, and would be paid out of the property in priority to all other liens. I presume there can be no question about that proposition, but the method and time of carrying it out are not necessarily involved in the decision of Judge Jenkins just read as to the taxes. That decision was that they be paid out of the property when sold, as I gather from reading it, and at all events, whether that be so or not, that is what is in my mind now. These taxes are in the nature of a first mortgage upon the property, and whenever the property is sold, the first mortgage for taxes will be met. In the meantime it seems to me that I will have to pursue the same course in regard to the lien of taxes that I am pursuing in regard to the lien for everything else. If I directed the clerk,

IX. Porto Rico.—**9.**

Gregg Co. v. Utuado Sugar Co.

to whom the income of the property is paid, to pay the taxes as
the income comes in, it might very well be that there would not
be enough left of the income to go to anybody else. In other
words, the court would be administering this property for the
benefit of the taxes alone. I do not think that that is law or
equity either. The taxes, as I intimated once before, seem to
me to come under the general rule of marshaling; that is to
say, they are a first lien upon the corpus of the property, and
possibly upon the income of the property. I am not deciding
that, but assuming that the other preferred creditors have a
lien upon the income of the property only. The general rule
of equity is that where one person has recourse to two funds
and another has recourse to only one of the two, the court of
equity will limit the first creditor to the fund which is not
covered by the two liens; that is to say, to the corpus of the
property in this case. There is no question that ultimately
the taxes will be paid. As it occurs to me now, this is the
course that will be pursued. I will make an order that a rea-
sonable amount be paid from time to time on back taxes, as
heretofore, but it seems to me that this has gone about as far
as the case would admit for the present unless the property is
sold. That may not, as I understand, be very far off. It has
been intimated here in court that there might be some reorgan-
ization. However, the above is the view that occurs to me now.
I am always open to conviction, and I would be very glad to
have a citation of authorities. In the meantime a submission
is taken, and whatever authorities are to be cited will be handed
me in the next five days.

Gregg Co. v. Utuado Sugar Co.

HAMILTON, Judge, delivered the following opinion August 2, 1916:

3. Further consideration of the Utuado tax matter gives no reason to change the views above expressed. The law seems to be that when property comes into the possession of the receiver of a court it is to be considered as in sequestration, or held in equitable execution; and while the lien for taxes must be recognized and enforced, the orderly administration of justice requires this to be done under the sanction of the court. The revenue officers of the state—in this case of the Island—being deprived of the ordinary means of securing the public revenue from the fund in the custody of the court, the duty is imposed upon the court to be satisfied, and upon the receiver to see, that the public taxes due are paid before the estate is distributed to other creditors. There can be no scheme of administration adopted by which the demand of the public could be reduced to the level of an ordinary debt, even if not presented to the court in a formal manner and by given time as in the case of ordinary claims. It is "the imperative duty of the court to recognize as paramount, and enforce with promptness and vigor, the just claims of the authorities for the prescribed contributions to state and municipal revenue." Re Tyler, 149 U. S. 164, 37 L. ed. 689, 13 Sup. Ct. Rep. 785. It is not even necessary that receivers ask the sanction of the court to pay taxes, for in their accounts such payments will be passed without question. Ex parte Chamberlain, 55 Fed. 704. When taxes are due on property in the hands of a receiver and he has no funds to pay them, the court may even authorize him to borrow money for that purpose and annex to the obligation

given for the money the same lien which the taxes were to have. Hanna v. State Trust Co. 30 L.R.A. 201, 16 C. C. A. 586, 36 U. S. App. 61, 70 Fed. 2. Whenever taxes are properly brought to the court's attention, they should be promptly paid. First Nat. Bank v. Ewing, 43 C. C. A. 150, 103 Fed. 168.

4. In the application at bar, a material part of the sum claimed is made up of what are called surcharges; that is to say, a penalty of 1 per cent a month for the nonpayment of taxes. P. R. Pol. Code, § 330. They take the place of interest. Being required by the same statute which establishes the taxes themselves, no reason appears why surcharges should not be entitled to the same priority that attaches to the taxes. No case has been cited to the contrary, except one in this court, which has not been reported. The details of this settlement are not clear and can hardly be considered as controlling authority. Surcharges really amount to a change in the rate of interest in favor of the public in the matter of taxes, from 6 per cent to 12 per cent per annum; and as the law in Porto Rico permits a contract for interest up to 12 per cent, there seems to be no reason why it cannot be fixed by law in favor of the public.

5. The special difficulty in this case seems to be rather that it is claimed the assessment for 1914–15 was too high. The taxes for that tax year are four times as much as those for the next tax year. The receiver has been instructed to do whatever is possible in the way of readjusting this assessment, and it does not seem necessary to discuss this matter at this time.

The conclusion seems to be, therefore, that the taxes and surcharges, assuming them to be properly assessed, are a proper charge upon the assets of this receivership, and should be paid

before the property is distributed among the creditors, and they should be paid as promptly as possible. In this case, however, there has recently been paid by order of this court about a thousand dollars on taxes, and a large amount previously. It would seem that the court has been doing all that is reasonable and that the principle of marshaling, above discussed, is applicable. It does not seem wise to consider the question of sale of any part of the property to pay back taxes, particularly in view of plans on foot for reorganization. The most that could be done is to pay current taxes and provide for ultimate payment of all taxes from the corpus of the receivership property.

A decree will be entered, therefore (1) directing the lessee to pay the taxes which are due under his lease, and also any surcharges which have arisen since the time when, under the lease, these taxes were payable by him, and at the time of paying these he shall request in writing that they be credited to the current taxes as required by his lease; if this request is refused, he shall, however, pay the taxes and return his request and the written refusal to the court, and he will be held to have fulfilled the requirements of his lease with regard to taxes. The receiver will see that the lessee carries out this order.

(2) The receiver shall from time to time, as he may be in funds, pay the amount of the taxes not covered by the lessee's contract, if any, to the proper authorities, with a written request for the application as in the case above outlined for the lessee, and make his return.

It does not seem feasible to pay all back taxes out of the current income, but their lien of priority upon the corpus of the receivership is not in any way disturbed by this decree, the

Gregg Co. v. Utuado Sugar Co.

true intent of which is to provide mainly for the current taxes. The court does not hereby intend to direct how the Treasurer of Porto Rico shall apply the amount so paid, as a proper adjustment of this matter may come up on the final payment before the close of the receivership.