## Jordan *et al. versus* Headman.

1. A devise was to executors to sell real estate and invest the proceeds, and during the life of R. to pay the income to A., his wife, for the support of R. and A. and their children, her receipt to be a discharge to the executors; on the death of R. the principal to be paid to his children. *Held*, that until sale A. had an interest in the land and the executors must account to her for the profits made from it.

2. R. contracted with H. for stone from the land, informing R. at the time that he had arranged with the executors to pay a certain price for the stone in the ground. On a payment in part by H., R. gave a receipt as agent for his wife. *Held*, that this was not evidence that R. contracted with the executors as agent for his wife, that she should receive the stone on account of profit from the land payable to her.

3. Primâ facie R. was the purchaser from the executors; it was incumbent on the wife, as against R.'s creditors, to prove that the stone was hers.

February 19th 1869. Before Thompson, C. J., Read, Sharswood and Williams, JJ. Agnew, J., at Nisi Prius.

Error to the District Court of *Philadelphia*: No. 241, to January Term 1869.

This was an attachment-execution, issued by H. W. Jordan and Henry Buchenhorst, partners, &c., on a judgment recovered by them against Robert J. Sheridan. Louis Headman was the garnishee. The amount in the garnishee's hands was $118. The question was whether it belonged to the defendant in the execution or to his wife. From the evidence given in the case it appeared that Headman, the garnishee, purchased from Robert Sheridan building stone which was quarried by him from real estate that

[Jordan v. Headman.]

had belonged to his father, Owen Sheridan, then deceased. By his will the decedent, amongst other things, directed his executors to sell his real estate at such times as they should think most advisable for the interest of all concerned, and apportion the proceeds into four equal shares from time to time, as the said real estate should be sold by them. He further provided as follows: —" One of said shares I direct my said executors to invest in good securities at interest, and during the lifetime of my son, Robert J. Sheridan, to pay over the net income thereof quarterly to his wife, Annie Sheridan, to be used by her for the support of my said son Robert, and herself and his children, and her receipt shall be a good and valid discharge therefor to said trustees, and upon the death of my said son Robert, then I give and bequeath the said one-fourth part of the principal of my estate unto all his children who may be living at the death of my said son Robert."

The contract for the stone was made by Headman with Robert Sheridan. Headman testified :—

" I asked Robert about whether he had to get the executors to release off about that stone. He said he had arranged everything right about that with them. It wasn't necessary. He said he was to pay 12½ or 20 cents a perch for the stone in the ground. He did not tell, when he made the contract, that he was acting as agent for his wife. He hauled the stone to me. He drove himself, most of the time. Mr. Sheridan didn't say he was acting as agent for his wife until the first receipt. This was in the name of the wife. I didn't know the meaning, and asked. He said he was agent of his wife. I paid him two instalments, $45 and $20. When I made the contract I asked him who were the executors, and he told me. I asked him then if I paid him the money if it was necessary for her to release off. He said he had all that fixed. He had to pay so much a perch for the stone."

Hare, P. J., amongst other things, charged :—

" So far as the legal question is concerned, I am of opinion that inasmuch as part of the proceeds of this land were, when sold, to have belonged to his wife for life, for the support of her family, so, until the sale took place, while it remained unsold, she had a corresponding interest in the land. If so, she and the other legatees were the persons equitably entitled to the benefit of the proceeds ; and if, under those circumstances, a contract was made between the executors and husband, in good faith, that he should take out stone from a portion of the land and sell it for the benefit of the wife, I think that the proceeds of that sale would not be liable to be taken in execution for his debts.

" In corroboration of that view of the case, when Robert J. Sheridan gave a receipt under the contract, he gave the receipt as agent for his wife, which would seem to indicate that he was acting with a view to the appropriation of the money, so far as concerned

11 P. F. Smith—12

[*Jordan v. Headman.*]

her interest in that way. I see nothing in that purpose necessarily conflicting with any rule of law; and if you believe the design was to carry out in good faith that purpose, the labor bestowed by him will enure to his wife's benefit, and you may find a verdict in this case for the garnishee."

The verdict was for the garnishee.

The plaintiffs took a writ of error, and assigned for error, in several specifications, the charge of the court.

*J. G. Johnson*, for plaintiffs in error.—It must be shown that the wife's money was actually applied to the purchase of the stone: Keeney *v.* Good, 9 Harris 349; Flick *v.* Devries, 14 Wright 266. There was no evidence of a contract with the executors by Robert Sheridan that he should sell the stone for the benefit of his wife. It was error to submit the question to the jury: Evans *v.* Mengel, 1 Barr 68. As to the wife's right to the proceeds of the land by virtue of the will, he cited Rush *v.* Vought, 5 P. F. Smith 437; McDowell *v.* Rissell, 1 Wright 164; Hallowell *v.* Horter, 11 Casey 375; Brolasky *v.* Galley, 1 P. F. Smith 512; Hoffman *v.* Toner, 13 Wright 231; Baringer *v.* Stiver, 1 Id. 129; Robinson *v.* Wallace, 3 Id. 129.

*C. H. Gross*, for defendants in error.—The least evidence is sufficient to go to the jury: Fitzwater *v.* Stout, 4 Harris 22. The husband's labor on his wife's property did not make it his: Weiman *v.* Anderson, 6 Wright 311; Rush *v.* Vought, 5 P. F. Smith 437; Patterson *v.* Robinson, 1 Casey 82; Hemphill *v.* McClimans, 12 Harris 367; Barto's Appeal, 5 P. F. Smith 386.

The opinion of the court was delivered, February 25th 1869, by

SHARSWOOD, J.—This was an attachment-execution issued on a judgment against Robert Sheridan, and the question was, whether the price of certain stone sold by the defendant to the garnishee, Louis Headman, belonged to the defendant or to his wife, Annie Sheridan. This stone had been quarried by the defendant from real estate which had belonged to his father, Owen Sheridan, who, by his last will and testament, after ordering his real estate to be sold, directed one-fourth of the proceeds to be invested by his executors, and the net income thereof to be paid over to Annie Sheridan, the wife of his son Robert, to be used by her for the support of his said son and herself and children, with a bequest over to his children. According to the testimony of Louis Headman, the garnishee, and the only witness in the case, he purchased the stone from Robert Sheridan. " I asked Robert about whether he had to get the executors to release off about that stone. He said he had arranged everything right about that with them; it wasn't necessary. He said he was to pay 12½ or 20 cents a

[Jordan v. Headman.]

perch for the stone in the ground." Subsequently, upon Headman's first payment on account, Robert gave the receipt as agent for his wife.

No doubt under the will, until a sale, the wife had an interest in the land, and the executors must account to her for one-fourth of any profits made from it. If there had been any evidence whatever in the case that the executors had contracted with Robert Sheridan, as agent for his wife, that she should receive the stone in part of her share, the profit gained by the sale of it would have been hers, though her husband may have bestowed his own labor in quarrying and hauling it. But we have looked in vain through the testimony for any spark of evidence from which such a contract could be inferred. Surely, the act of the husband, in receipting for the payments as agent for the wife, would not make it hers. Primâ facie, he was the purchaser from the executors, and if she was, and not he, nothing would have been easier than to have proved it. It was incumbent on the wife, as against her husband's creditors, to prove that it was hers. It was error, therefore, to submit to the jury to determine whether "a contract was made between the executors and husband, in good faith, that he should take out stone from a portion of the land and sell it for the benefit of the wife," when there was no evidence whatever of any such contract.

Judgment reversed, and *venire facias de novo* awarded.