BRUN et al. v. MANN.

(Circuit Court of Appeals, Eighth Circuit. November 7, 1906.)

No. 2,306.

**1.** Courts—Federal Courts—Jurisdiction in Administration of Estates of Deceased Persons—Facts—Decision.

A decree of a federal court had been allowed as the only claim against the estate of a deceased person in the county court of a state in which administration was pending. The only property of that estate consisted of certain lands and water rights appurtenant. The statutes of the state imposed the duty upon the administratrix to institute a proceeding either in the county court or in the district court of the state to sell the unexempt real property to pay debts. She claimed that the real estate was exempt, and refused to commence the proceeding.

*Held*, the federal court in which the decree was rendered had jurisdiction to entertain a suit commenced by the complainant in that decree and to render a decree for the sale of the land notwithstanding the pendency of the administration in the county court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 801.]

**2.** Same—Jurisdiction to Enforce Their Judgments and Decrees Plenary.

The jurisdiction is conferred by the Constitution and laws of the United States, and the duty, which they may not renounce, is imposed upon the national courts to enforce their judgments and decrees and to decide by their own independent judgment every controversy which conditions their complete execution.

This power may not be lawfully destroyed, limited, or diminished by the legislation of the states or the decisions of their courts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 795, 796, 801.]

**3.** Same—Dependent Suit—Nature—Purpose—Maintainable Without Diversity of Citizenship or Federal Question.

A suit in equity dependent upon a former action of which the national court had jurisdiction may be maintained without diversity of citizenship or a federal question (1) to aid, enjoin, or regulate the original suit; (2) to restrain, avoid, explain, or enforce the judgment or decree therein; or (3) to enforce, or obtain an adjudication of liens upon or claims to property in the custody of the court in the original case.

**4.** Same—Jurisdiction of Controversies Arising During Administration, but Not of the Administration of Estates as Such.

The national courts have jurisdiction of controversies arising during the pendency of the administration of estates of deceased persons in the state courts which condition the enforcement of their judgments or decrees or the rights of aliens, citizens of other states, and other parties who might invoke their action and their adjudications if the controversies arose otherwise, and their decisions and decrees prevail over the statutes of the states and the decisions of their courts.

But the federal courts have no jurisdiction of the administration of the estates of deceased persons as such.

**5.** Same—Jurisdiction as Extensive as That of State Courts of General Jurisdiction.

Rights created and remedies provided by the statutes of the states to be pursued in the state courts of general jurisdiction may be enforced and administered in the national courts either at law, in equity or in admiralty, as the nature of the rights and remedies may require. As the state statutes conferred jurisdiction on the district court of the state to decree a sale of real estate during administration, the federal court had like jurisdiction in a proper case.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 972–976.]

151 F.—10

6. SAME—COUNTY COURTS—SALE OF LAND.

The general rule is that the court which first acquires jurisdiction of specific property in a suit or proceeding to enforce a lien upon it or to subject it to sale wherein it may be necessary to take possession or dominion of it may retain the exclusive legal custody of it until the suit is at an end or until ample time for its termination has elapsed.

But the legal custody and jurisdiction of this land by the county court was limited by the grant of jurisdiction to the district court and to the federal court to sell it during administration.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 1345, 1410.]

7. ACTIONS — CAPACITY TO SUE — CONSTITUENT OR CESTUI QUE TRUST HAS, WHEN LEGAL REPRESENTATIVE OR TRUSTEE REFUSES.

A constituent or cestui que trust may sue and make his representative or trustee a defendant when the latter refuses, after reasonable demand, to commence a suit or take a proceeding which it is his duty to institute for the benefit of the former.

8. COURTS — FEDERAL COURTS — EQUITABLE JURISDICTION — ABSENCE OF ADEQUATE REMEDY AT LAW.

It is an absence of an adequate remedy at law in the national courts only that conditions their jurisdiction in equity. Such a remedy in the state courts is immaterial.

9. EQUITY—LACHES—NONE WHEN ANALOGOUS ACTION AT LAW NOT BARRED AND NO UNUSUAL CIRCUMSTANCES.

The doctrine of laches is an equitable principle which is invoked to promote, but never to defeat, justice. It has no function where the analogous action at law is not barred and no unusual conditions invoke its application.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 191–196.]

10. STATUTES—CONSTRUCTION—WORDS AND PHRASES HAVE THEIR COMMON SIGNIFICANCE—NO ROOM FOR CONSTRUCTION WHEN PLAIN.

Words and phrases should receive their common, ordinary significance unless it clearly appears that they were used in some other sense. Plain statutes raise a conclusive presumption that the legislative body intended what it expressed, and they may not be repealed or modified by construction.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, §§ 266, 267.]

11. PUBLIC LANDS—HOMESTEADS—EXEMPTIONS—"DEBT CONTRACTED" DOES NOT EXEMPT FROM EVERY "LIABILITY INCURRED" FOR TORTS.

The exemption of lands acquired under the homestead laws and the timber culture laws (2 U. S. Comp. St. 1901, pp. 1534, 1535; Act March 4, 1896, c. 40, § 4, 29 Stat. 113, 114; 2 U. S. Comp. St. 1901, p. 1398, § 2296; Act May 20, 1862, c. 75, § 4, 12 Stat. 393) from any "debt contracted" previous to their acquisition, does not exempt them from liabilities for the torts of the entrymen previously perpetrated.

12. COURTS—CONFLICTING JURISDICTION—JURISDICTION OF RES—PAYMENT OF CLAIM—DUTY TO DETERMINE ADVERSE CLAIMS—SUBSEQUENT PROCEEDINGS IN OTHER COURTS.

When, in a suit in equity for the sale of property to satisfy the claim of the complainant, a court acquires jurisdiction of the property and of the parties, subsequent proceedings by any of the parties in other courts, without leave of the court which first acquired jurisdiction, are ineffectual to establish claims to the property or its proceeds adverse to those of the complainant. But the duty is imposed upon the court which first acquires such jurisdiction to hear and determine such adverse claims when seasonably presented to it.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Colorado.

On October 11, 1901, the complainant, Mann, exhibited his bill in the court below against Kate E. Brun, the widow and the administratrix with the will annexed of the estate of Tillett, and against Kate E. Brun, and Jessie Wakeman, legatees under Tillett's will, to subject two tracts of land one of which had been patented to Tillett in 1892 under the timber culture laws of the United States (U. S. Comp. St. 1901, pp. 1534, 1535; Act March 4, 1896, c. 40, § 4, 20 Stat. 113, 114) and had been devised by him to Jessie Wakeman, and the other of which had been patented to Tillett in December, 1892, under the homestead laws of the United States (2 U. S. Comp. St. 1901, p. 1398, § 2296; Act May 20, 1862, c. 75, § 4, 12 Stat. 393) and had been devised by him to Kate E. Brun, to the payment of a judgment which had been rendered in favor of the complainant and against the administratrix and the estate of Tillett in the court below for $19,718.56 on April 1, 1899. The defendants challenged the right of the complainant to the relief he sought by demurrers and by answers, and the defendant Brun sought affirmative relief by a cross-bill. But the court granted a decree for the sale of the land to satisfy the judgment, and refused relief to the defendants. This decree is questioned by the appeal.

The jurisdiction of the court below to entertain the suit, its jurisdiction to order a sale of the real estate pending administration in the county court of the state, the equity of the bill, and the refusal of the court to grant affirmative relief to Brun, are challenged by the assignments of error. An acquaintance with the essential facts which condition the issues thus presented is indispensable to a correct understanding of their discussion and decision. On January 3, 1885, Mann, who was then a resident and citizen of the state of Nevada, recovered a judgment against Tillet, a citizen and resident of Colorado, and against one Bloomfield, in the court below for $30,591, for carrying away and converting the cattle of the plaintiff to the defendants' use On September 13, 1892, in consideration of a conveyance of a piece of prairie land worth about $1,700, made by Bloomfield, Mann satisfied one half of the judgment and released Bloomfield from all liability on account of the judgment, but expressly reserved his claim against Tillett for the payment of the other half. In the latter part of 1892 the two tracts of land in controversy were patented to Tillett. On March 18, 1896, Tillett died testate, but left no property except the lands in controversy and a small amount of money which was exhausted in the payment of the expenses of his last sickness and of his funeral. His will was proved in the county court of Prowers county, in the state of Colorado, which, under the laws of that state, had jurisdiction of the probate of wills and of the administration of estates, and one Thompson, the executor, qualified as such; but he died on April 29, 1897, and Kate E. Tillett, the widow, who subsequently by marriage became Kate E. Brun, was appointed and qualified as administratrix with the will annexed. On January 24, 1897, Mann filed in the county court his claim against the estate of Tillett for the amount of his judgment and interest. Kate E. Tillett shortly after her appointment as administratrix exhibited her bill in the court below to procure a decree of discharge and satisfaction of Mann's judgment, and he filed a cross-bill in that suit, wherein he prayed for a revivor of his judgment. That suit resulted in a decree rendered about April, 1899, to the effect that Mann's judgment was revived against the administratrix and against the estate of Tillett for the sum of $19,718.56 to be paid in due course of administration, and that a copy of the decree should be certified to the county court of Prowers county for allowance, classification, and payment. The administratrix appealed, and this decree was affirmed by this court on October 15, 1900. Tillett v. Mann, 43 C. C. A. 617, 104 Fed. 421. In April, 1899, the claim of Mann for this $19,718.56, based on the judgment of revivor, was filed in and allowed by the county court of Prowers county as a claim against the estate. No other claim was presented or allowed, and the administratrix presented no petition and took no action to apply the lands of the estate to the payment of Mann's claim. Thereupon, on September 21, 1901, he made a written demand of her as administratrix that she should file a petition in court and proceed to secure a

sale of the land to pay his claim, and she refused to do so. Mann then, on October 11, 1901, exhibited his bill in the court below and commenced this suit. At the time of its commencement Kate E. Brun had made no claim for expenses of administration or for a widow's allowance, although Tillett had been dead for more than five years and she had been administratrix more than four years, and the only claim against the estate in the county court was that of the complainant. After the suit was commenced, and on October 3, 1902, Kate E. Brun resigned as administratrix and the county court allowed her $1,128.60, for her expenses as such. In November, 1902, she applied to the county court for the appointment of appraisers to estimate and set-off to her a widow's allowance. The court appointed such appraisers, who, without notice to Mann, reported her allowance to be $2,085. She then gave notice to Mann that she intended to apply to the county court for an approval of that allowance, and the court below, upon application, enjoined her from proceeding further upon that course. In June, 1903, she made application to the court below for leave to file a supplemental cross-bill, in which she set forth her claim to a widow's allowance and a claim for an allowance for expenses and services as administratrix, and the court denied her application. A final hearing was had in this suit, and on May 9, 1905, the final decree was rendered.

A. C. Phelps, for appellants.

R. T. McNeal (E. T. Wells, on the brief), for appellee.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The real controversy between the parties to this suit is whether or not the lands patented to Tillett in 1892 are exempt from liability to pay the judgment in favor of Mann, which is founded on Tillett's wrongful taking and conversion of the plaintiff's cattle in 1881. The acts of Congress under which Tillett secured the lands provide that no land acquired thereunder shall be liable for the satisfaction of any "debt contracted prior to the issuance" in the one case of the patent (2 U. S. Comp. St. 1901, p. 1398, § 2296; Act May 20, 1862, c. 75, § 4, 12 Stat. 393), and in the other of the final certificate thereunder (2 U. S. Comp. St. 1901, pp. 1534, 1535; Act March 4, 1896, c. 40, § 4, 29 Stat. 113, 114). The complainant insists that his claim is not a debt contracted by Tillett, but that it is a liability incurred by him for a wrong, and hence that the land is not exempt from the payment of his claim. The defendants challenge this contention and claim the exemption of the lands and the water rights appertaining thereto. If this issue be decided in favor of the complainant, he will be entitled to a sale of the lands, and, if it be determined in favor of the defendants, the lands are free from the complainant's claim. This controversy did not arise until the judgment of revivor had been rendered and the amount of that judgment had been allowed as a claim against the estate of Tillett and it had been classified by the county court of Prowers county for payment in the month of April, 1899. Upon the proof and allowance of this, the only claim, against the estate, the duty devolved upon the administratrix under the statutes of Colorado (2 Mills' Ann. St. §§ 4751, 4770, 4778) to institute and conduct a proceeding in the nature of a suit in equity either in the county court or in the district court of Prowers county, in accordance with the practice of courts of chancery,

to subject these lands to a sale, and to apply their proceeds to the sat- isfaction of the claim of Mann. From April, 1899, when this duty was imposed upon her, until September, 1901, the administratrix neglected it, and then in reply to a written demand she refused to commence the suit, and the complainant pleaded these and other facts in his bill and besought the court below to subject these lands to a sale. The court granted a decree for the relief he sought.

Counsel for the appellants assail this decree on the grounds (1) that the court below had no jurisdiction of the proceeding because it is a suit to enforce the judgment of the state court and there is no diversity of citizenship or federal question, and because the complainant had an adequate remedy at law by a procedure in the county court; (2) that the suit is barred by laches; (3) that the lands are exempt from liability for the claim of the appellee; (4) that the federal court has no jurisdiction to sell the lands because the administration of the estate is still pending and the lands and the water rights appertaining thereto are in the legal custody of the county court; and (5) that the court below erred in its treatment of the claim of Brun for a widow's allowance and for expenses of administration.

Diversity of citizenship and the amount in controversy conferred jurisdiction upon the United States Circuit Court to render the original judgment against Tillett for his wrongful seizure and conversion of the cattle. Plenary power to enforce this judgment and to determine every controversy between the parties thereto and their successors in interest which conditioned that enforcement inhered in, and was a necessary part of, this jurisdiction. No state legislation may take away from the national courts the power to enforce their adjudications, because that power is derived from the supreme law of the land, from the Constitution and the statutes of the United States. "The courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction." Chicot County v. Sherwood, 148 U. S. 529, 533, 534, 13 Sup. Ct. 695, 37 L. Ed. 546; Barber Asphalt Pav. Co. v. Morris, 66 C. C. A. 55, 59, 60, 132 Fed. 945, 949, 950, 67 L. R. A. 761; Act Aug. 13, 1888, c. 866, § 1, 25 Stat. 433, 434 [U. S. Comp. St. 1901, p. 508]; Davis v. Gray, 16 Wall. 203, 221, 21 L. Ed. 447; Ex parte McNiel, 13 Wall. 236, 20 L. Ed. 624; Cowley v. Railroad Co., 159 U. S. 569, 583, 16 Sup. Ct. 127, 40 L. Ed. 263; Cummings v. Bank, 101 U. S. 153, 157, 25 L. Ed. 903; Gaines v. Fuentes, 92 U. S. 10, 20, 23 L. Ed. 524; Railway Co. v. Whitton, 13 Wall. 270, 278, 287, 20 L. Ed. 571; Broderick's Will, 21 Wall. 503, 520, 22 L. Ed. 599; Gormley v. Clark, 134 U. S. 338, 348, 10 Sup. Ct. 554, 33 L. Ed. 909; Darragh v. H. Wetter Mfg. Co., 78 Fed. 7, 14, 23 C. C. A. 609, 616; Richardson v. Green, 9 C. C. A. 565, 571, 578, 61 Fed. 423, 429, 435; National Surety Co. v. State Bank of Humboldt, 120 Fed. 593, 56 C. C. A. 657;[1] Sawyer v. White, 122 Fed. 223, 227, 58 C. C. A. 587, 591. The only limit upon this power of the national courts to execute their judgments and decrees is that they may not seize or take from another court property in its exclusive legal custody. Williams v. Benedict,

[1] 61 L. R. A. 394.

8 How. 107, 12 L. Ed. 1007; Yonley v. Lavender, 21 Wall. 276, 22 L. Ed. 536; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749.

When, therefore, the controversy over the exemption of these lands arose and conditioned the execution of that portion of this judgment which had been revived and the complainant invoked the jurisdiction of the court which rendered it, the power was conferred and the duty which it might not lawfully renounce was imposed upon that court to hear and decide by its own independent judgment the question thus presented.

Nor was the right of the complainant to invoke this jurisdiction conditioned by the existence of a federal question or of diversity of citizenship or of the amount in controversy. A bill in equity dependent upon a former action of which the federal court had jurisdiction may be maintained in the absence of either of these attributes (1) to aid, enjoin, or regulate the original suit; (2) to restrain, avoid, explain, or enforce the judgment or decree therein; or (3) to enforce or obtain an adjudication of liens upon, or claims to property in the custody of the court in the original suit. Such a dependent suit is but a continuation in a court of equity of the original suit, to the end that more complete justice may be done. Campbell v. Golden Cyc. Min. Co., 141 Fed. 610, 613, 73 C. C. A. 260; Guardian Trust Co. v. Kansas City Southern Railway Company (C. C. A., 8th Circuit) 146 Fed. 337; Dewey v. West Fairmount Gas Coal Co., 123 U. S. 329, 8 Sup. Ct. 148, 31 L. Ed. 179; Minnesota Co. v. St. Paul Co., 2 Wall. 609, 17 L. Ed. 886; Logan v. Patrick, 5 Cranch, 288, 3 L. Ed. 103; Dunn v. Clarke, 8 Pet. 1, 8 L. Ed. 845; Cortes v. Thannhauser (C. C.) 9 Fed. 226; Johnson v. Christian, 125 U. S. 642, 8 Sup. Ct. 989, 31 L. Ed. 820; Aldrich v. Campbell, 97 Fed. 663, 38 C. C. A. 347; Wehrman v. Conklin, 155 U. S. 314, 15 Sup. Ct. 129, 39 L. Ed. 167. This is a suit to enforce the execution of the judgment of revivor rendered in the federal court. It is not, as counsel claim, a proceeding to enforce the allowance or the judgment of allowance of the complainant's claim in the county court. That allowance was complete in itself and functus officio when made. It adjudged no recovery by the complainant, no sale for his benefit, no further relief. The judgment of revivor in the federal court granted to the complainant the right to recover $19,718.56 of the estate of Tillett, and this suit was instituted to enforce that right and to determine the controversy over the exemption of the lands which conditions it. It has every element of a dependent suit in equity in the federal courts.

Did the pendency of the administration of the estate in the county court and the fact that the statutes of Colorado empowered the administratrix to conduct the proceeding for the sale of the lands in the county court or in the district court of the state deprive the federal court of jurisdiction of this suit and of the controversy it presented? A federal court has no jurisdiction of, and no power to draw to itself, the administration of an estate as such, but it has plenary authority over every controversy in such an administration which involves the enforcement of its judgments, and over every other controversy therein of which jurisdiction is conferred upon it by the

acts of Congress. Its adjudications of these issues prevail over the statutes of the states and the decisions of its courts. Otherwise the judgments and decisions of the federal courts would be subject to nullification by the rulings of state courts and the acts of state Legislatures. Foreign creditors may establish their debts in the courts of the United States, and the adjudications of those courts prevail notwithstanding the fact that the laws of the states limit the right to prove such demands to proceedings in the probate courts of the states where the administrations are pending. Union Bank of Tennessee v. Jolly's Adm'rs, 18 How. 503, 15 L. Ed. 472; Lawrence v. Nelson, 143 U. S. 215, 12 Sup. Ct. 440, 36 L. Ed. 130; Suydam v. Broadnax, 14 Pet. 67, 74, 10 L. Ed. 357; Borer v. Chapman, 119 U. S. 587, 588, 589, 7 Sup. Ct. 342, 30 L. Ed. 532; Payne v. Hook, 7 Wall. 425, 430, 19 L. Ed. 260; Arrowsmith v. Gleason, 129 U. S. 86, 98, 9 Sup. Ct. 237, 32 L. Ed. 630; Johnson v. Waters, 111 U. S. 640, 667, 4 Sup. Ct. 619, 28 L. Ed. 547; Hayes v. Pratt, 147 U. S. 557, 570, 13 Sup. Ct. 503, 37 L. Ed. 279; Security Trust Co. v. Black River National Bank, 187 U. S. 211, 227, 23 Sup. Ct. 52, 47 L. Ed. 147. Foreign distributees may establish and enforce by decrees in the federal courts their rights in the estates of deceased persons during the pendency of administration in the courts of the states. Byers v. McAuley, 149 U. S. 610, 618, 620, 621, 622, 13 Sup. Ct. 906, 37 L. Ed. 867. And, where the courts of general jurisdiction of a state are empowered by its statutes to determine the validity of wills, the federal courts have like jurisdiction in cases in which the necessary diversity of citizenship and amount in controversy or other jurisdictional facts exist. Gaines v. Fuentes, 92 U. S. 10, 20, 23 L. Ed. 524; Richardson v. Green, 9 C. C. A. 565, 571, 578, 61 Fed. 423, 429, 435; Ellis v. Davis, 109 U. S. 485, 497, 3 Sup. Ct. 327, 27 L. Ed. 1006; Sawyer v. White, 122 Fed. 223, 227, 58 C. C. A. 587, 591. The exclusive grant of jurisdiction of estates of deceased persons to the county courts by the statutes of the state of Colorado, therefore, did not deprive the federal court of jurisdiction of this suit or of the controversy it involves.

Not only this, but the federal court sitting in equity has jurisdiction by virtue of the statutes of Colorado themselves to entertain a suit in equity to subject the real estate of this decedent to the payment of the claim allowed against his estate pending the administration in the county court. The district court of that state is a court of general original jurisdiction. The jurisdiction of the county court is limited to the probate of wills, the administration of the estates of decedents, and other specified subjects. The statutes of Colorado provide that, when the personal property of an estate is insufficient to pay the claims allowed against it, the administrator shall present to the county court, or to the district court, a petition for the sale of the real estate of the decedent to which the widow or husband and the heirs at law, and, if any of the real estate be devised, the devisees shall be defendants (Mills' Ann. St. § 4751); that a summons shall issue upon the petition and shall be served upon the defendants (sections 4752, 4753, 4754, 4755, 4756, 4757); that the form of the proceeding shall conform to the proceedings in courts of chancery and there shall

be no trial by jury (section 4758); that any person interested in the estate as creditor or otherwise and not made defendant may appear and answer to the petition (section 4760); that the court may render a decree for the sale of the land (sections 4761–4765), and may receive and approve a report of the sale and direct a conveyance (sections 4766–4769). Thus jurisdiction is conferred upon courts of general jurisdiction of the state of Colorado to entertain suits in chancery for, and· to decree sales of, the real estate of decedents while administration is pending in the county courts. But "a party by going into a national· court does not lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality." Davis v. Gray, 16 Wall. 203, 221, 21 L. Ed. 447. Rights created and remedies provided by the statutes of the states to be pursued in the state courts of general jurisdiction may be enforced and administered in the national courts either at law, in equity, or in admiralty as the nature of the rights and remedies may require. Darragh v. H. Wetter Mfg. Co., 23 C. C. A. 609, 615, 616, 78 Fed. 7, 13, 14; National Surety Co. v. State Bank, 56 C. C. A. 657, 666, 120 Fed. 593, 612;[2] Cummings v. Bank, 101 U. S. 153, 157, 25 L. Ed. 903; Broderick's Will, 21 Wall. 503, 520, 22 L. Ed. 599; Gormley v. Clark, 134 U. S. 338, 348, 10 Sup. Ct. 554, 33·L. Ed. 909; Cowley v. Railroad Co., 159 U. S. 569, 582, 16 Sup. Ct. 127, 40 L. Ed. 263. The federal court sitting in equity had as complete jurisdiction to entertain a suit and to render a decree in an appropriate case for the sale of the real estate of this estate to satisfy a judgment which it rendered against the deceased in his lifetime, or a just claim of a foreign creditor as was conferred upon the district court of the state.

And here, too, is the answer to the contention of counsel for the appellants that the decree of sale of the lands and of the water rights appurtenant thereto was in excess of the jurisdiction of the court below because they were in the legal custody of the county court. The court which first acquires jurisdiction of specific property in a suit or proceeding to enforce a lien upon it or to subject it to sale in a case in which it may find it necessary or convenient to take possession of, or dominion over it, is entitled to retain that jurisdiction until the suit is at an end or until ample time for its termination has elapsed. Williams v. Neely, 67 C. C. A. 171, 185, 134 Fed. 1, 15, 69 L. R. A. 232; Gates v. Bucki, 4 C. C. A. 116, 128, 129, 53 Fed. 961, 969; Memphis Sav. Bank v. Houchens, 115 Fed. 96, 110, 52 C. C. A. 176, 190, 191; Zimmerman v. So Relle, 25 C. C. A. 518, 521, 80 Fed. 417, 420. If a proceeding had been instituted in the county court under the statute to subject this real property to sale, and a summons had been issued and served therein before this suit in the federal court was instituted, the custody and dominion of the state court would have been exclusive and the national court must have stayed its hand until the termination of the proceeding in the state court or the lapse of ample time for its conclusion. It is conceded, but it is not considered or decided, that this real estate was in the legal custody of the county court until the suit in the court below was commenced. The custody of the county court, however, was a legal custody, a custody authorized and limited by the law. It was for the purposes, to the extent and subject to the limitations

2 61 L. R. A. 394.

fixed by the law of the land and by the statutes of the state. One of the express limitations of its jurisdiction and dominion was prescribed by the statutes which have been recited. It was that its legal custody was subject to the jurisdiction and power of the district court of the state and of the federal court of the district to take the jurisdiction and the custody of the land and of the appurtenant water rights for the purpose of selling them and of applying their proceeds to the payment of the allowed claims against the estate whenever an appropriate proceeding for that relief was first commenced in one of those courts. If such a suit had been instituted in the district court of the state, the jurisdiction and legal custody of the property in controversy for the purpose of its sale and conveyance would have passed immediately to that court by virtue of these express provisions of the statutes. Since a party loses no right or remedy by going into a national court, plenary jurisdiction and dominion of this property for the purposes of the sale and conveyance which the complainant here seeks was divested from the county court and vested in the court below by virtue of the statutes and the law the moment the service of the summons in the suit here pending was effected. The result is that the United States Circuit Court had full jurisdiction of the subject-matter of this suit to enforce its own judgment and to determine a controversy which conditioned the only redress the complainant could obtain thereunder and the decree of sale and conveyance of the lands and the appurtenant water rights was not in excess of its jurisdiction, and did not deprive the county court of any custody or dominion of the property to which it was lawfully entitled under the statutes.

But it is said that the complainant had no legal capacity to sue because the statutes of the state require the administrator or the executor to institute the proceedings for the sale of the real property of an estate. The answer is that the complainant had the right to invoke the independent judgment of the federal court upon the issues in this suit regardless of the proceeding authorized by the Colorado statute, and he could accomplish this result only by a suit instituted by himself dependent upon his former judgment in the circuit court. There is another answer. The administratrix, after a written demand, refused to institute the proceeding for a sale of the real estate prescribed by the statutes of Colorado. She was the legal representative of the complainant. When a legal representative or a trustee refuses after due demand to commence a suit or to take a legal proceeding for the benefit of his constituent or cestui que trust which it is his duty to begin or to take, the constituent or the cestui que trust may institute it in his own name and make the representative or the trustee a defendant. The complainant had lawful capacity to institute this suit.

The next objection to the bill is that the complainant had an adequate remedy at law, in that he might have applied to the county court for an order upon the administratrix to file the petition for the sale or for her removal and the appointment of a successor by that court. But it is an absence of an adequate remedy at law in the national courts and that alone which conditions jurisdiction in equity in those courts, and the complainant had no such remedy. Yonley v. Lavender, 21 Wall. 276, 22 L. Ed. 536. The fact that he had a remedy at law in the state

courts is not material. National Surety Co. v. State Bank, 56 C. C. A. 657, 666, 120 Fed. 593, 602;[3] Smyth v. Ames, 169 U. S. 466, 516, 18 Sup. Ct. 418, 42 L. Ed. 819; Arrowsmith v. Gleason, 129 U. S. 86, 98, 9 Sup. Ct. 237, 32 L. Ed. 630; Mayer v. Foulkrod, 4 Wash. C. C. 349, Fed. Cas. No. 9,341; Bean v. Smith, 2 Mason, 252, Fed. Cas. No. 1,174; Coler v. Board (C. C.) 89 Fed. 257; U. S. Life Ins. Co. v Cable, 39 C. C. A. 264, 98 Fed. 761. Again, the adequate remedy at law which will deprive a court of equity of jurisdiction must be a remedy as certain, complete, prompt, and efficient to attain the ends of justice as the remedy in equity. Boyce v. Grundy, 3 Pet. 210, 215, 7 L. Ed. 655; Williams v. Neely, 67 C. C. A. 171, 180, 134 Fed. 1, 10, 69 L. R. A. 232. The remedy by application to the county court for a direction to the administratrix to commence a proceeding for the sale, or by an application for her removal, is much less prompt and efficient to secure just results than this direct suit in equity. The complainant had no adequate remedy at law.

Another complaint of the defendants is that Mann has been guilty of such laches in the collection of his claim that a court of equity should turn a deaf ear to his plaint. Tillett and his successors in interest have paid nothing for the cattle of which he deprived the complainant in 1881, and the record is slightly suggestive of some dilatoriness in the discharge of this duty on their part. Prompt payment of the judgments of the court below when rendered would have obviated the delay of the complainant. He secured his first judgment in 1885. He proved it against the estate of Tillett on January 24, 1899, within the year after the death allowed by the statutes of Colorado for such proof. Mills' Ann. St. § 4780. It is true that the lien of a judgment upon real estate expired under the statutes of Colorado six years after its entry. Gen. St. 1883, § 1839. But Tillett had no real estate within six years after the original judgment was entered, and that judgment was duly revived in 1899, within the time allowed for such a purpose by the laws of that state. Mann proved and secured an allowance of the revived judgment by the county court within a month after he recovered it, and he instituted this suit within one month after the administratrix refused to commence such a proceeding. The doctrine of laches is an equitable principle which is applied to promote, but never to defeat, justice. Under ordinary circumstances, a suit in equity will not be stayed on account of laches before, and it will be stayed after the analogous statutes of limitations at law. But, if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. When a suit is brought within the time fixed by the analogous statute, the burden is on the defendants to show either from the face of the bill or by their answer that extraordinary circumstances exist which require the application of the doctrine of laches in order to secure a just result. Kelley v. Boettcher, 29 C. C. A. 14, 21, 85 Fed. 55, 62; Ide v. Trorlicht, Duncker & Renard Carpet Co., 53 C. C. A. 341, 352, 115 Fed. 137, 148. This suit was commenced

[3] 61 L. R. A. 394.

within the time limited by the statutes of Colorado for the institution of the analogous action at law upon the revived judgment. No unusual conditions or circumstances are presented which will render its maintenance unjust or inequitable, while the long delay of the payment of the judgment by Tillett and his successors, the unsuccessful suit of the administratrix to procure the satisfaction of the original judgment without paying, or offering to pay, any part thereof, and her delay and final refusal to proceed to sell the land to discharge this claim, appeal to the conscience of a chancellor with compelling force. The only culpable laches in this case was that of Tillett and his successors in interest. The complainant was not guilty of any, and his suit may not be defeated upon that ground.

We come, then, to the merits of this case. The acts of Congress declare that no lands acquired under the homestead and timber culture laws shall be liable for the satisfaction of any "debt contracted prior" to their acquisition from the government. 2 U. S. Comp. St. 1901, p. 1398, § 2296; Act. May. 20, 1862, c. 75, § 4, 12 Stat. 393; 2 U. S. Comp. St. 1901, pp. 1534, 1535; Act March 4, 1896, c. 40, § 4, 20 Stat. 113, 114, § 4. Tillett acquired these lands under these statutes. He unlawfully took and converted Mann's cattle before he acquired them. He never contracted, or agreed or consented, to pay for the cattle. The question is: Are lands thus acquired exempt from liability for wrongs perpetrated as well as for debts contracted by those who secure them? The line of demarcation between the two great classes of the liabilities of parties, between liabilities created by agreement or by consent and liabilities created by torts, can never be absent from the minds of those members of Congress whose duty it is to criticise, amend, and perfect its acts. The Constitution of the United States broadened and deepened this line of separation and projected it through all the legislation in the nation when it prohibited the states from impairing the obligation of contracts (U. S. Const. art. 1, § 10), but permitted them to impair the obligations of liabilities and judgments for wrongs. Louisiana v. Mayor of New Orleans, 109 U. S. 285, 288, 3 Sup. Ct. 211, 27 L. Ed. 936; Garrison v. City of New York, 21 Wall. 203, 22 L. Ed. 612; McAfee v. Covington, 71 Ga. 272, 51 Am. Rep. 263. In this state of the law and with this provision of the Constitution in force, Congress exempted the lands which it practically donated to the entryman under the homestead and timber culture acts from any debt contracted previously by the patentees, but from no other liabilities. The terms "liability incurred" and "debt contracted" are equally familiar. When the subject of liabilities is brought to the attention, they occur to the mind with equal readiness, and when contrasted their significations are clear and definite. If an act provided that lands should be exempt from every liability incurred, there could be no doubt that they would be free from all liabilities, both from those arising out of contracts and from those arising out of torts. If it provided that lands should be exempt from every debt contracted, but should still be chargeable with every other liability incurred by its owners, no one would have the hardihood to say that it was free from liability for their torts. These terms and their meanings could not have failed to occur to those who

drafted, or to those who-passed, the acts of Congress under consideration, and their rejection of the familiar and broad term "liability incurred" and their selection and adoption of the limited expression "debt contracted" is a demonstration that they had no purpose to exempt the lands they gave from liability for the wrongs which the patentees might have perpetrated and that they intended to free it from the debts which sprang from their agreements only.

It is said that the term "debt contracted" does not always mean a debt by agreement, that the significance of the word "debt" is extensive enough to include liability for a tort and especially a judgment for it, and that such a judgment evidences a debt by a contract of record. The argument is too ingenious and specious to prevail. The ordinary signification of the term "debt contracted" includes neither a liability for a wrong done nor a judgment for the damages caused thereby, and, in the absence of any evidence that this expression was intended to be used in any other sense, a familiar rule of construction requires that it shall be given its common and its usual meaning. The contention of counsel here is well answered by Mr. Justice Field in Louisiana v. Mayor of New Orleans, 109 U. S., at page 288, 3 Sup. Ct., at page 213 (27 L. Ed. 936), in these words:

"A judgment for damages, estimated in money, is sometimes called by textwriters a 'specialty' or 'contract of record,' because it establishes a legal obligation to pay the amount recovered; and by a fiction of law a promise to pay is implied where such legal obligation exists. It is on this principle that an action ex contractu will lie upon a judgment. Chitty on Contracts (Perkins' Ed.) 87. But this fiction cannot convert a transaction wanting the assent of parties into one which necessarily implies it. Judgments for torts are usually the result of violent contests, and, as observed by the court below, are imposed upon the losing party by a higher authority against his will and protest."

Counsel invoke the conceded rule that homestead and exemption laws are beneficial to the citizen and should be liberally construed, and then they insist that the word "contracted" has other meanings than "agreed," that it sometimes means "acquired without consent" as a contracted disease, and that the expression "debt contracted" should, therefore, be interpreted to mean "liability incurred." There are two reasons why this argument is not convincing. In the first place, while it is a rule inspired by public policy that exemption and homestead laws should have a liberal construction, there is a more imperative rule of public policy which forbids the interpretation appellants seek. It is that laws should be so construed and enforced, where no legal obstacle prevents, as to repress wrong and prevent crime. It has frequently been and is the policy and law of the land that debtors may be discharged from liability for their honest obligations by a surrender of their property. But at the same time the nation refuses to release them from liabilities for their frauds and malicious injuries, even though all their property is surrendered to their creditors. Bankr. Act July 1, 1898, c. 541, § 17, 30 Stat. 550 [3 U. S. Comp. St. 1901, p. 3428]. It may well be that Congress was willing to donate the lands of the nation to citizens free from debts which they had promised or consented to pay, but which through misfortune they were unable to discharge, but that it was unwilling to offer a reward for wrong and

a premium for crime by giving its lands to their perpetrators free from all liability for their torts. As the Congress has not done so, no liberal or other rule of construction requires, and public policy forbids, judicial legislation to that effect. In the second place, it is only when the terms of a statute are ambigous and their significance is uncertain that the rule of liberal construction has any function. It is the intention expressed in a statute, and that alone to which the courts may lawfully give effect. They may not assume or presume purposes and intentions that the terms of the statute do not indicate and then enact or expunge provisions to accomplish these supposed intentions. They may not suppose that Congress intended to exempt these lands from every liability incurred when it expressed the intention to exempt them from every debt contracted only, and then substitute the one term for the other for the purpose of expressing the assumed intention. Construction and interpretation have no place or office where the language of the statute is unambiguous and its meaning evident. There is a conclusive presumption that the legislative body intended what it declared, the statute must be held to mean what it clearly expresses, and no room is left for construction. U. S. v. 99 Diamonds, 139 Fed. 961, 964, 72 C. C. A. 9, 2 L. R. A. (N. S.) 185. In view of the patent distinction between debts by contract and liabilities for wrongs, of the familiar use of the term "debt contracted" to indicate the former, and the term "liability incurred" to signify both, of the marked distinction between the two classes of liabilities embodied in the Constitution of the United States and the decisions of the courts, of the public policy of the nation to release debtors from their honest obligations and to refuse to discharge them from their liabilities for frauds and malicious injuries, and of the evident rejection of the expression "liability incurred" and the selection and adoption of the term "debt contracted" by the Congress in the acts under consideration, the latter phrase is too clear in expression and too certain in significance to permit the substitution for it of the term "liability incurred" by any rule of construction. Such a substitution would be judicial legislation which the courts are not authorized to enact, and would import into these acts of Congress an exemption which the Congress did not insert therein, and which the plain term it used conclusively demonstrates it never intended to enact. The conclusion is that the exemption of lands acquired under the homestead and timber culture laws from liability for any "debt contracted" by the patentees does not exempt them from liabilities for torts previously incurred, and the lands and water rights involved in this litigation are subject to sale to satisfy the judgment of Mann.

The fact has not escaped attention that some courts have substituted the words "liability incurred," or their meaning, for the term "debt contracted," in these acts of Congress by the use of the rule of liberal construction, by the rejection of the primary and ordinary meaning of the words "debt contracted" and by the imputation to them of an ingenious and secondary signification (State v. O'Niel, 7 Or. 141; Flanagan v. Forsythe [Okl.] 50 Pac. 152, 153; Warner v. Cammack, 37 Iowa, 642; Conroy v. Sullivan, 44 Ill. 451; Loomis v. Gerson,

62 Ill. 11; In re Radway, Fed. Cas. No. 11,523; Mertz v. Berry [Mich.] 59 N. W. 445, 446, 24 L. R. A. 789, 45 Am. St. Rep. 379); and that statutes which use other terms such as "any debt or liability contracted" have been construed to include liabilities for torts (Smith v. Omans, 17 Wis. 395, 397). But the arguments and the opinions in these cases are not convincing. Reasons which appeal more strongly to our minds sustain our conclusion, and it is not without the support of respectable authority. Meredith v. Holmes, 68 Ala. 196; Williams v. Bowden, 69 Ala. 433; Vincent v. State, 74 Ala. 274; McLaren v. Anderson, 81 Ala. 106, 8 South. 188; Kirkpatrick v. White, 29 Pa. 176, 179; Kenyon v. Gould, 61 Pa. 176; Bohn v. Brown, 33 Mich. 257; Lathrop v. Singer, 39 Barb. (N. Y.) 396, 399; Schouton v. Kilmer, 8 How. Prac. (N. Y.) 527; Burton v. Mill, 78 Va. 468; Schussler v. Dudley (Ala.) 2 South. 526, 528, 60 Am. Rep. 124; Leighton v. Campbell (R. I.) 20 Atl. 14, 15, 9 L. R. A. 187; Whiteacre, Sheriff, v. Rector, 29 Grat. (Va.) 714, 26 Am. Rep. 420; McAfee v. Covington, 71 Ga. 272, 51 Am. Rep. 263.

After this suit was commenced the defendant Brun resigned as administratrix, presented and secured from the county court an allowance of a claim for $1,128.66 for moneys expended by her during the administration, and was proceeding in that court to secure an allowance as widow when she was enjoined from doing so by the court below. There was no property of the estate of Tillett except the lands and water rights described in the decree in this suit, and the only purpose of Brun's proceedings was to charge this property with the claims she was urging. But, as we have seen, when this suit was commenced the exclusive legal custody of this property for the purpose of sale and conveyance was vested in the court below, and from that time forth proceedings to charge it with or to subject it to claims or allowances in any other forum without leave of the court below were futile. It was by application to, and the decree of, that court, of the court which had the exclusive jurisdiction and control of the property for the purpose of its sale, and by such an application and decree alone, that any claimant could secure any lien upon, or interest in these lands and water rights during the pendency of this suit. In re Tyler, 149 U. S. 164, 183, 188, 191, 13 Sup. Ct. 785, 37 L. Ed. 689; Virginia T. & C. Steel & Iron Co. v. Bristol Land Co. (C. C.) 88 Fed. 134, 139, 140; Johnson v. Southern Bldg. Ass'n (C. C.) 132 Fed. 540, 544; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; White v. Schloerb, 178 U. S. 542, 547, 20 Sup. Ct. 1007, 44 L. Ed. 1183. As the proceedings in the county court after its commencement were ineffectual to charge this property or its proceeds with any claim, there was no prejudicial error in the injunction which stayed them.

On the other hand, the exclusive jurisdiction and custody of this property for the purpose of selling it to pay the claims against the estate of Tillett, which the commencement of this suit vested in the court below, imposed upon it the duty to hear and determine every claim to a lien upon, to an interest in, or to a right to that property, through the administration of Tillett's estate, adverse to the prayer of the complainant, because all parties who held such claims were remediless otherwise, and because in entertaining the bill and decreeing the

sale the Circuit Court was administering the laws of the state and was bound by the same rules which govern the local tribunals. Security Trust Co. v. Black River National Bank, 187 U. S. 211, 227, 23 Sup. Ct. 52, 47 L. Ed. 117. Since the defendant Brun, before the final hearing in the court below, presented to that tribunal a supplemental cross-bill for the allowance and payment out of the proceeds of the sale of the property of her expenses of administration and of an allowance to her as a widow, that court should have permitted her to file her bill and should have heard and determined the claims it presents. French v. Gapen, 105 U. S. 509, 525, 526, 26 L. Ed. 951. No decision is now made nor intimation given upon the question of the alleged laches of Brun or upon any other issue of law or of fact which the cross-bill does or may present. These questions do not appear to have been considered or decided by the court below, and they are reserved until its opinion upon them shall be heard. The conclusion is that the proceedings taken in the county court after the commencement of this suit without leave of the court below were incompetent and useless to affect any lien upon, or interest in the real estate here in controversy, or in its proceeds, or to adjudicate any issue which conditions any such lien or interest, and that the court below was vested with exclusive jurisdiction and charged with the duty to hear all claims of this nature adverse to those of the complainant.

The decree below must accordingly be reversed, and the case must be remanded to the Circuit Court, with directions to permit the defendant Brun to file a cross-bill, to allow the complainant to demur or answer to it, and to take further proceedings not inconsistent with the views expressed in this opinion.